UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

**DECISION AND ORDER**
11-CR-85A

v.

DALE LOCKWOOD,

Defendant.

## I.    INTRODUCTION

Pending before the Court is a motion (Dkt. No. 84) by defendant Dale

Lockwood for reconsideration of the Court's order of detention of March 7, 2011.

Defendant seeks release or a reopening of his detention hearing on the grounds

that his co-defendants have been released, that wiretapped conversations

including him are non-criminal in nature, and that suitable conditions of release

exist.  The Government opposes release on the grounds that defendant has not

demonstrated a change of circumstances that would warrant the relief requested.

The United States Probation Office ("USPO") recommends continued detention.

The Court held oral argument on December 2, 2011.  For the reasons

below, the Court denies defendant's motion.

## II.    BACKGROUND

This case concerns allegations that defendant and 11 other individuals

conspired to run a drug operation in the Western District of New York between

2006 and 2011. The indictment, filed on March 2, 2011, contains 35 counts plus two forfeiture allegations. Only Count One concerns this defendant. In Count One, the Government charged defendant with conspiracy to possess with intent to distribute, and to distribute, five kilograms or more of a mixture or substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The Court arraigned defendant on March 3, 2011. On March 7, 2011, the Court held a detention hearing for defendant, at the end of which it held orally that defendant would remain in custody because he presented a risk of danger to the community and a risk of flight. The Court relied on defendant's USPO pretrial services report, dated March 3, 2011. According to the pretrial services report, defendant was a maintenance laborer at the time of his arrest and held prior jobs as a taxi cab driver and a laborer at Bethlehem Steel. Defendant's criminal history included a conviction in 1975 in Buffalo City Court for attempted possession of a loaded firearm; a conviction in 1986 in Georgia for felony drug possession and purchases; and a conviction in 1992 in Cheektowaga Town Court for driving while intoxicated. The pretrial services report included information that the agents who arrested defendant and searched his residence found the following on the premises: an Uzi submachine gun, a defaced firearm, a bulletproof vest, and money in both a crawl space and a closet.

On September 27, 2011, defendant filed the pending motion for reconsideration of detention. In support of his motion, defendant suggests that

the wiretap evidence disclosed to him barely includes him at all and is non-criminal in nature. Additionally, defendant notes in summary fashion that every co-defendant in this case has been released on various conditions. Defendant concludes his motion by asserting that, given the time that will pass before the case is ready for trial, the Court should consider several factors that weigh in favor of release on conditions. According to defendant, he lives alone and owns two residences, either of which he is willing to submit for electronic monitoring or home confinement. Defendant asserts that he has had no criminal convictions in the past 20 years. Finally, defendant's motion papers contain the statement that he "is a businessman and is unable to conduct his business from his prison cell where he is detained." (Dkt. No. 84 at 3.)

Both the Government and the USPO oppose defendant's release. The Government argues that defendant's circumstances have not changed and that defendant still cannot rebut the statutory presumption in favor of detention. Additionally, the Government and the USPO point to information in the motion papers that contradicts confirmed information about defendant. Defendant asserts now that he lives alone, event though three other adults and a child were found in his residence on the day of his arrest. Defendant stated in his bail interview that he owned only one residence but now claims in his motion papers that he owns two. Defendant stated in his bail interview that he worked as a maintenance laborer at the time of his arrest but now claims to be a

"businessman" without explaining what that "business" is. Finally, defendant asserts that he was arrested without incident, but both the Government and the USPO note that agents took seven firearms from his house on the day of arrest. All seven firearms were fully loaded, and two of them were found in defendant's bedroom. The Government and the USPO assert that these contradictions raise troubling questions about defendant's risk of flight.

## III. DISCUSSION

"The Eighth Amendment to the Constitution states that '[e]xcessive bail shall not be required.' U.S. Const. amend. VIII. Consistent with this prohibition, 18 U.S.C. § 3142(b) requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Statutory factors to be considered when assessing flight or danger include the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

With respect to flight risk, "the government carries a dual burden in seeking pre-trial detention. First, it must establish by a preponderance of the evidence

that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *Sabhnani*, 493 F.3d at 75 (citations omitted). "To order detention, the district court must find, after a hearing, that the government has established the defendant's dangerousness by clear and convincing evidence. The rules of evidence do not apply in a detention hearing. Further, the government may proceed by proffer." *U.S. v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citations omitted).

Once the Court has issued a detention order in the manner set forth above, it may reconsider that order and reopen the detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *U.S. v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted). Where evidence was available to defendant at the time of the

hearing, the hearing will not be reopened. *See U.S. v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *U.S. v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

Here, defendant has not presented any information unknown to him previously that would warrant a change in his custody status. The Court previously found defendant to be a danger and a flight risk based on his criminal history, the nature of the pending charges, and the information available in the pretrial services report. Those factors have not changed. Defendant does not contest that seven fully loaded firearms and a bulletproof vest were found at his residence when he was arrested. Defendant asserts that the wiretapped conversations that include him are non-criminal in nature, but that is his own opinion. Defendant refers to the length of his detention, but a detention of 13 months by itself does not constitute a dispositive factor under the bail statute. *See U.S. v. Millan*, 4 F.3d 1038, 1044 (2d Cir. 1993) ("Length of detention will rarely by itself offend due process. This court has upheld projected pretrial detention periods of up to thirty-two months.") (internal quotation marks and citations omitted); *accord U.S. v. Beutler*, No. 09-CR-96, 2011 WL 3321374, at *1 (W.D.N.Y. Aug. 2, 2011) (McCarthy, *M.J.*) ("[Defendant's] approximately 26 months of pretrial detention, standing alone, does not violate due process.") (citing *Millan*). Defendant compares himself to co-defendants who have been released but offers no basis for that comparison. *Cf. U.S. v. Clark*, 68 F.3d 467 (table), 1995 WL 581606, at *2 (5th Cir. Aug. 29, 1995) (rejecting a defendant's

6

claim "that her detention violates equal protection because her co-defendants were released" on the grounds that defendant made no showing of disparity in treatment). Regardless of any such comparison, "the Court gives no weight to the fact that a co-defendant was released on bail, since the determination as to bail for that defendant was based upon independent factors not before the Court." *U.S. v. Duncan*, 897 F. Supp. 688, 691 (N.D.N.Y. 1995).

If anything, defendant has undermined his credibility and strengthened the Court's previous finding of a flight risk by creating two factual discrepancies with his motion papers. When interviewed for his pretrial services report, defendant never mentioned anything about being a "businessman." That defendant uses that term now in his motion papers raises questions about what that "business" is and why defendant failed to disclose it for inclusion in the pretrial services report.[1] Additionally, defendant mentions in his motion papers that he lives alone and owns two residences, glossing over previous information that he owned only one residence and that he lived with at least three other people at the time of his arrest. Together, these discrepancies cast doubt on how candid defendant was during his pretrial interview. The Court finds that this doubt enhances its concern that defendant will try to evade further prosecution if given a chance to do so.

In short, defendant has given the Court no new and material information

---

[1] For obvious reasons, any such "business" almost certainly would have started before defendant's current incarceration and thus should have been disclosed to the USPO.

that helps his effort to change his custody status.  The Court is content to let its prior detention order stand.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court denies defendant's motion for bail (Dkt. No. 84).  Defendant shall remain in custody pending trial.

Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

Despite the Court's order of detention, defendant shall be afforded reasonable opportunity for private consultation with counsel.  Additionally, on order of the Court or on request of an attorney for the Government, the person in charge of the corrections facility in which defendant is confined shall deliver defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding in this case.

SO ORDERED.

_____/s Hugh B. Scott_____
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: March 28, 2012